Heller, Ehrman, White & McAuliffe, San Francisco, Cal., for plaintiff.

Cooper, White & Cooper, San Francisco, Cal., for defendants.

---

**BUSINESS GUIDES, INC., Plaintiff,**

v.

**CHROMATIC COMMUNICATIONS ENTERPRISES, INC. and Michael Shipp, Defendants.**

**No. C 86–6164 SC (FW).**

United States District Court, N.D. California.

Aug. 5, 1988.

---

ORDER IMPOSING SANCTIONS

CONTI, District Judge.

On April 12, 1988, this court issued an order adopting the recommendations of Chief Magistrate Woelflen that Business Guides, Inc. ("Business Guides") and its counsel Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey ("Finley Kumble") be sanctioned pursuant to Fed.R.Civ.P. 11. The order of the court also unsealed the file and record in the matter, and granted defendants Chromatic Communications Enterprises, Inc. ("Chromatic") and Michael Shipp ("Shipp") thirty days to respond to the court's findings with a motion for sanctions. The matter is currently before the court on defendants' motion for sanctions.

The defendants originally brought this motion for sanctions against both Business Guides and Finley Kumble. Subsequent to the defendants' notice of the motion, this court received a letter from the law firm of Milbank, Tweed, Hadley & McCloy ("Milbank Tweed") informing the court that Finley Kumble had recently dissolved and that the estate was in Chapter 11 bankruptcy proceedings in the United States Bankruptcy Court, Southern District of New York. Milbank Tweed informed the court that it represented the Chapter 11 Trustee for Finley Kumble, and that pursuant to court order, any proceeding to recover a claim against Finley Kumble was stayed under Section 362 of the Bankruptcy Code.

The issue of the applicability of a bankruptcy stay to these proceedings has never been briefed. After consulting with Milbank Tweed, defendants decided to withdraw that part of their motion which applied to Finley Kumble. Defendants' motion is therefore directed only toward Business Guides. The court will accept the representation of Milbank Tweed, as counsel for the trustee in bankruptcy, that any proceedings against Finley Kumble are stayed pursuant to the Bankruptcy Code. The court's disposition of the matter before it does not prejudice defendants' right to pursue a sanctions award against Finley Kumble should its legal status change.

Defendants argue that the action Business Guides brought against them had no basis in fact and was interposed to harrass them. Defendants seek the imposition of sanctions against Business Guides, pursuant to Rule 11, in the form of an award of attorney's fees, damages for loss of business, and an order dismissing the action. Business Guides opposes defendants' motion, arguing that sanctions are inappropriate in the circumstances of this case.

The factual background and law applicable to this matter was set out in detail in the court's April 12, 1988 order. *See Business Guides v. Chromatic Communications Enterprises, Inc.*, 119 F.R.D. 685 (N.D.Cal.1988). In their moving papers, however, defendants have proferred evidence which further develops the factual background of these proceedings. In its order of April 12, 1988, the court explained that of the ten purported "seeds" used in Business Guides' directory, the seeds which allegedly demonstrated copyright infringement, the court could only confirm the falsity of the information given in one seed. 119 F.R.D. at 687. Defendants have now come foward with competent evidence that they did not copy the lone purported seed from Business Guides' directory. Rather, the defendants argue that the remaining seed was "planted" in their directory by Business Guides to investigate their operation.

The seed at issue was originally described by Business Guides as an entity entitled NFR Computer Room, 87–32 253rd St., Bellerose, New York 11426. An individual named Nick Rossini was listed as the President and Buyer of this company. According to plaintiff, Business Guides invented this company, and no such company has ever existed. *See* Declaration of Michael Lambe in Support of Plaintiff's Application for a Temporary Restraining Order and for Preliminary Injunction, p. 6, filed with this court on November 7, 1986.

Michael Shipp, the president of Chromatic, has submitted a declaration in which he states "unequivocally" that he never purchased, borrowed, acquired, or ever had in his possession Business Guides' directory prior to the preparation of Chromatic's directory. Declaration of Michael Shipp in Support of Motion for Award of Sanctions, p. 3. Shipp further states

I have personally reviewed portions of this Court's record, following the unsealing thereof on or about April 12, 1988. From my review of that record, it appears that plaintiff is contending that I copied its publication, and although it originally pointed to ten so-called "seeds" which allegedly prove such copying, that claim is now reduced to a single "seed": Richard Rossini. From a review of my own records, I have determined that Richard Rossini, doing buisness as The Answer Man, was added to our data base when he ordered one of our directories. Attached hereto as Exhibit "A" is a true

and correct copy of his order. Attached hereto as Exhibit "B" is a true and correct copy of his recent order for Micro-Leads. Following our standard practice, I forwarded to Mr. Rossini a questionnaire or survey for completion and return. Attached hereto as Exhibit "C" is a true and correct copy of the completed survey form I received from Mr. Rossini.

*Id.* pp. 3–4. Exhibit A is a copy of an order for Chromatic's diskette and source book. The form has been filled out with the name of Richard Rossini as president of a company called The Answer Man. The order gives the same New York address that Business Guides states it invented. Exhibit B is a copy of an order for a Chromatic directory with the same name and address filled in as Exhibit A. Exhibit C is a copy of a letter to Nick Rossini from Chromatic's source book asking for any changes to the NFR Computer Listing. The letter appears to reflect a change in the title of Rossini's company to "Rossini's Computer Room." This evidence indicates that some individual or entity other than Chromatic or Shipp was responsible for this seed appearing in Chromatic's directory.

Business Guides makes no attempt to challenge defendants' evidentiary showing. Business Guides neither admits nor denies defendants' contention that the purported seed was planted in Chromatic's directory by Business Guides. In fact, Business Guides' opposition to defendants' motion makes no mention of the Shipp declaration or the exhibits. This court can only interpret Business Guides' silence on this subject as its tacit admission that defendants were not in fact responsible for the appearance of this purported seed in the Chromatic directory. The court is left to conclude that Business Guides' entire lawsuit has no basis in fact.

Business Guides opposes defendants' motion by arguing that, as a matter of law, it cannot be sanctioned for the use of its master seed list or for the presentation of an incorrect and inadequate explanation during the sanctions proceedings. These are arguments Business Guides has asserted throughout the proceedings. Business Guides also argues that it should not be

sanctioned for relying in good faith on its counsel, and that Rule 11 does not authorize consequential damages.

This court has already found that Business Guides violated Rule 11. There is nothing in Business Guides' opposition papers which has persuaded this court that this determination is unsound. The court has already considered and rejected Business Guides' argument that its conduct is not sanctionable as a matter of law. The court, however, takes this opportunity to respond to Business Guides' characterization of the conduct for which it is being sanctioned.

Business Guides argues that

... to hold that the method of preparing the list *in 1984* gave rise to a violation of Rule 11 when the list was relied upon in 1986 is, in effect, to impose upon Business Guides a "continuing duty" to re-evaluate or re-check business records. That is inconsistent with a steady line of cases which hold that Rule 11 is only applicable as of the "snapshot" in time when a pleading or other paper is filed. [citations omitted]

Memorandum of Points and Authorities of Business Guides, Inc. in Opposition to Defendants' Motion for Sanctions ("Memorandum of Business Guides"), p. 6. Business Guides is missing the point. The point is that a "snapshot" of the pleadings in this case demonstrates that Rule 11 *was* violated. When the pleadings were filed Business Guides' claims had no basis in fact; there was, and is, no evidence of copyright infringement. Rule 11 does not apply to the manner in which Business Guides prepares its business records. However, the rule does apply to the manner in which Business Guides brings lawsuits. The rule requires that a "reasonable inquiry" be conducted before embarking on litigation. This Business Guides failed to do. This failure is sanctionable.

Business Guides has also argued that because of the intervening bankruptcy filing by Finley Kumble the burden of any sanction falls entirely on it. Business Guides argues that this is unfair because it

was merely relying in good faith on its counsel. Business Guides argues that imposing sanctions on it in these circumstances "is akin to penalizing a patient who, although he has described to his physician his symptoms, failed to diagnose his cancer." Memorandum of Business Guides, p. 12.

The court first states that any decision not to impose sanctions on Finley Kumble is based on the legal effect of the bankruptcy stay and does not reflect a determination by this court that Finley Kumble's conduct was not sanctionable. The court, however, does not accept Business Guides' suggestion that responsibility in this manner is better directed toward its counsel. Both Business Guides and its counsel acted unreasonably throughout this litigation. Furthermore, it was Business Guides' failure to get its facts straight which precipitated this lawsuit. The problem with the commencement of this lawsuit, to use Business Guides' analogy, was not a faulty diagnosis, it was false symptoms.

This case illustrates well the dangers of a party's failure to act reasonably in commencing litigation. Here Business Guides, a sophisticated corporate entity, hired a large, powerful and nationally known law firm to file suit against a competitor for copyright infringement. This competitor happened to be a one-man company operating out of a garage in California. Two years later, after extensive time and effort on the part of the court, the various counsel for Business Guides, as well as various counsel for Business Guides' counsel, it turns out there was no evidence of infringement. The entire lawsuit was a mistake. In the meantime, the objects of this lawsuit have spent thousands of dollars of attorney's fees and have suffered potentially irreparable damage to their business. This entire scenario could have been avoided if, prior to filing the suit, Business Guides simply had spent an hour, like the court's law clerk did, and checked the accuracy of the purported seeds.

This court has already found that Business Guides violated Rule 11; the imposition of sanctions is therefore mandatory.

See *Hudson v. Moore Business Forms, Inc.*, 827 F.2d 450, 453 (9th Cir.1987). The district court has much discretion in tailoring an appropriate sanction for a party guilty of misconduct. "It is well established that courts have the inherent power to impose a variety of sanctions on both litigants and attorneys to regulate their docket, promote judicial efficiency, and deter frivolous filings." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980). The selection of an appropriate Rule 11 sanction " 'is ordinarily left in the first instance to the discretion of the district court, and it will not be disturbed on appeal absent a showing of an abuse of discretion.' " *Huettig & Schromm, Inc. v. Landscape Contractors*, 790 F.2d 1421, 1427 (9th Cir. 1986). The language of Rule 11 itself authorizes sanctions in the form of an order to pay the aggrieved party the amount of reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney's fee. Fed.R.Civ.P. 11. Further sanctions can include dismissal of the action with prejudice and entry of judgment by default. *Flaksa v. Little River Marine Construction Co.*, 389 F.2d 885, 887 (5th Cir.), *cert. denied*, 392 U.S. 928, 88 S.Ct. 2287, 20 L.Ed.2d 1387 (1968).

■ Defendants have submitted declarations which indicate that they have incurred legal expenses and out-of-pocket costs in the sum of $13,865.66 in defending this action and bringing this motion for sanctions. *See* Declarations of Messrs. Michael Shipp and Neil L. Shapiro in Support of Motion for an Award of Sanctions. Business Guides has not challenged the amount of claimed expenses or argued that the expenses were incurred unreasonably. After reviewing the papers filed in connection with this matter, the court finds that these legal expenses and costs were reasonably incurred. The court therefore orders Business Guides to pay defendants $13,865.66 as a sanction, pursuant to Fed. R.Civ. 11.

■ Defendants have also requested that they be compensated for economic losses suffered as a consequence of Busi-

**406**

ness Guides' commencement of this litigation. Shipp's declaration indicates that defendants suffered business losses of approximately $39,000 in the form of excess costs and lost profits as a result of the commencement of this lawsuit. The damage to defendants' business reputation and the cost of lost business opportunities is difficult to assess. It may well be that the defendants have suffered irreparable damage.

Defendants, however, have cited no controlling authority in support of their request for an award of consequential damages under Rule 11. The court, while sympathetic to defendants' plight, is not persuaded that such compensation is within the purview of Rule 11. The court is of the opinion that such relief may only be sought through a collateral action. The court therefore declines to order such relief.

Defendants have also sought dismissal of this action as a sanction. The court is mindful that dismissal of an action is a severe sanction. However, it is now evident that this action has no basis in fact. Given the rather remarkable circumstances of this case, and the serious consequences of Business Guides' improper conduct, the court finds that dismissal is warranted. The court therefore orders that this action be dismissed with prejudice.

Finally, the court must decide if any further sanctions should be imposed on Business Guides independently by this court. In its April 12, 1988 order the court expressed its concern that the taxpayers, by bearing the cost of the satellite sanction hearings, have in effect been punished for the parties' misconduct. 119 F.R.D. at 690. The court also stated its intention to impose sanctions on Business Guides and Finley Kumble in an amount which would reasonably reimburse the taxpayers for the cost of the sanction proceedings. *Id.* The court is still concerned with the unfairness of the taxpayers paying for the parties' misconduct. However, in light of the sanctions herein imposed, the court finds that the deterrent purpose of Rule 11 has been satisfied and the imposition of further sanctions is not warranted.

In accordance with the foregoing, the court orders that:

(1) Business Guides is to pay defendants $13,865.66 as a sanction, pursuant to Fed. R.Civ.P. 11; and

(2) the action is dismissed with prejudice.